IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| LINDA R. TROTTER,<br><br>          Plaintiff,<br><br>     vs.<br><br>KAREN D. TREDICK f/k/a<br>KARIN DICKINSON,<br><br>          Defendant. | CV 13–39–BU–DLC<br><br><br>ORDER |

Defendant Karen Tredick seeks to dismiss the complaint in this matter for insufficient service of process. Plaintiff Linda Trotter responds that Tredick is equitably estopped from dismissal, and that service was effective both on Tredick's agent and the Montana Secretary of State, prohibiting dismissal. Tredick's motion will be denied based on equitable estoppel grounds.

**I. Background**

Trotter and Tredick were involved in an auto accident in Beaverhead County, Montana on May 19, 2007. Trotter asserts that the accident was Tredick's fault and that she suffered injuries in the accident. Trotter filed a complaint in the Montana Fifth Judicial District Court on May 13, 2010. Trotter first attempted to

serve Tredick with the complaint on March 28, 2013. Seattle Legal Process attempted to serve Tredick at her home in Seattle, Washington on March 28, March 29, April 2, and April 5. Tredick's niece was staying at her home, and informed the process server that Tredick would return home April 2, but Tredick was not there when the process server returned that day. When the process server spoke with her by telephone on April 5, Tredick said she was in Mexico and would not return until May 21.

Trotter then hired Colleen Buzzell, a private investigator and process server, who also reached Tredick by telephone. Tredick told Buzzell that her insurance agent, Holly Sanders at Liberty Mutual, should be served rather than Tredick personally. Tredick told Buzzell she would contact Sanders and call her back, but failed to do so.

Next, Trotter hired private investigator Richard Conte who went to Tredick's house on April 26, 2013. Tredick's niece told Conte that Tredick was on an extended vacation in California, and would not provide him with specific information as to where she was or her contact information. Conte spoke with Tredick on the phone, and she said her insurance agent informed her she was covered for the accident and that service would be accomplished by publication. She told Conte she was not deliberately trying to avoid service; however, she

would not tell him where she was at that time, or give him any specifics as to her whereabouts until after the service deadline. Tredick told him she was traveling to North Carolina via Las Vegas, and would be at a campground in North Carolina from May 13-20.[1] The service deadline was May 13, 2013.

Trotter's counsel, David Cotner, called Tredick on April 26, 2013, and she said she was traveling and would not return to Seattle until May 21, 2013.[2] Tredick said she knew service must be accomplished by either May 13 or May 19, and suggested service by publication. Tredick stated that she wanted to contact her insurance agent for guidance, and would call Cotner back. Tredick never called back, and she refused to disclose her location or sign an acknowledgment of service.

Trotter then began the steps to serve the Montana Secretary of State, and the certified mail sent from the Secretary was returned marked "unclaimed" on May 8,

---

[1]Tredick stated in an affidavit filed June 5, 2013, that she informed Conte she would be in North Carolina from May 7-21. (Doc. 8 at 3.) Conte's affidavit states that Tredick told him she would be in North Carolina from May 13-21. (Doc. 27-4 at 3.) Conte's affidavit is based on notes he took during the telephone call (Doc. 36-5 at 12) whereas Tredick's deposition shows that she is not entirely clear about any of the dates various process servers called her, or even when she was in certain locations. Thus, the Court finds the dates specified in Conte's affidavit to be the most reliable.

[2]This statement was incorrect–Tredick was home from May 5-6, 2013. (Doc. 36-5 at 10.)

-3-

2013. (Doc. 3-2 at 3.) The State district court docket entry indicates that an affidavit of receipt of service of process by the Secretary of State was received on May 9, 2013, and the entry states "(defendant not served)." (Doc. 3-3.)

On May 3, Trotter attempted to have Holly Sanders with Liberty Mutual Insurance served in the Portland, Oregon office. Trotter's counsel was informed by Liberty Mutual that Sanders worked from the Idaho Falls, Idaho office, so a process server in Idaho Falls attempted service on Sanders in the office. That process server filed an affidavit stating that he personally served Holly Sanders at the Idaho Falls office on May 8, 2013. (Doc. 27-6.) However, Sanders states that she has never been to the Idaho Falls office and works from home near Boise, Idaho. (Doc. 36-4 at 9.)

Tredick removed this action to this Court on May 28, 2013, and filed a motion to dismiss for insufficient service of process on May 31, 2013.

## II. Standard

"Factual questions concerning a 12(b)(5) motion, regarding the manner in which service was executed, may be determined by the Court through affidavits, depositions, or oral testimony." *Travelers Cas. & Sur. Co. of America v. Telstar Const. Co., Inc.*, 252 F.Supp.2d 917, 923 (D.Ariz. 2003)(citing *SGS–Thomson*, 1993 WL 299230, *2).

The sufficiency of service is determined according to state law when service of process occurs before removal. *Lee v. City of Beaumont*, 12 F.3d 933, 936-37 (9th Cir. 1993); *Cardroom Intern. LLC v. Scheinberg*, 2012 WL 2263330, *2 (C.D. Cal. June 18, 2012). In Montana, the rules governing service of process are generally strictly construed by courts. *Semenza v. Kniss*, 122 P.3d 1203, 1208 (Mont. 2005). However, in some instances, the Montana Supreme Court looks to the reasonable belief of the process server regarding proper service and the likelihood the effected service would provide notice of the lawsuit to the defendant. *See Montana Professional Sports, LLC, v. National Indoor Football League*, 180 P.3d 1142, 1147-48 (Mont. 2008)("*NIFL*").

## III. Discussion

Montana Rule of Civil Procedure 4(e) states that "an individual–other than a minor or an incompetent person–must be served by either: (1) delivering a copy of the summons and complaint to the individual personally; or (2) delivering a copy of the summons and complaint to an agent authorized by appointment or law to receive service of process." Mont. R. Civ. P. 4(e) (2012). Trotter admits personal service was never perfected on Tredick. However, she argues several factors prevent dismissal of her complaint despite this deficiency:

1) Service was effective on Tredick's agent at Liberty Mutual;

-5-

2) Service was effective on the Montana Secretary of State;

3) Tredick avoided service and is thus equitably estopped from dismissal of the complaint; and

4) Her service efforts were so exhaustive that sufficient service may be found pursuant to Ninth Circuit law.

These arguments will be addressed in turn.

### A. Service on Holly Sanders of Liberty Mutual

Tredick claims that service on Sanders was not sufficient because she was not Tredick's agent, and, even if she was, Sanders was never personally served.

For service of Sanders to be sufficient, Trotter must have delivered "a copy of the summons and complaint to an agent authorized by appointment or law to receive service of process." Mont. R. Civ. P. 4(e)(2). Trotter contends *State ex rel. Gallagher v. District Court of Sixth Judicial District* (*Gallagher*) provides the proper standard for determining whether Sanders was Tredick's agent:

> the defendants are the moving parties here, and the question is not whether the driver has been proven to be their agent, but whether he has been proven not to be their agent, which must be established by them in order to prove that the case is not within the class in which service may be made under the statute in question, and therefore to entitle them to have the service quashed. Certainly, if there is any evidence from which the trial court could properly find that the agency relation existed, it cannot on account of a conflict in the evidence be placed in error for so doing. The question thus resolves itself to this: is there an entire absence of any credible evidence indicating that the

driver at the time of the accident was an agent of the defendants?

114 P.2d 1047, 1052 (Mont. 1941).

*Gallagher* involved the issue of whether the drivers of a vehicle were Gallagher's agents and thus capable of accepting service of a complaint for Gallagher. The drivers of the vehicle were employees of Gallagher's, who sold vehicles out of Washington and provided his employees a defective vehicle to drive from Washington to Illinois. The employees crashed the vehicle due to exhaust leaking into the cab of the vehicle, and there was conflicting evidence regarding whether the driver of the vehicle was actually Gallagher's employee at the time of the accident. The Court held that because some evidence, albeit conflicting, existed connecting the drivers to Gallagher, they were properly served as his agent under Montana's nonresident motorist statute. *Id*. at 1052-53.

In *Doble v. Talbott*, an attorney who represented the defendant in a closely related action to the one upon which service was effected was found to be an agent capable of accepting service for his client. 589 P.2d 994, 998 (Mont. 1979). The attorney's representation in the related matter "necessarily implied a duty to protect his client's interests against t[he] type of action" involved in the complaint. *Id.* Despite its professed insistence on strictly construing Rule 4, the Montana Supreme Court has since said of *Doble* that

> [s]ervice on an unauthorized agent in *Doble* effectively gave the defendant notice of the lawsuit and thereby afforded him the opportunity to defend himself. The attorney appeared to be authorized to accept the service, and the plaintiff reasonably believed that the attorney was a proper person to accept service. The attorney had an existing relationship with the defendant that practically ensured that the defendant would receive service. The attorney provided the defendant with the summons and complaint, thus providing the defendant notice of the lawsuit. We deemed the method of giving the defendant notice in *Doble* to be both fair and reasonable in light of the facts and circumstances.

*NIFL*, 180 P.3d at 1147 (internal citations omitted).

In *NIFL*, the plaintiff's process server served the complaint at NIFL's main office to a person who claimed to be the office manager. The officer manager turned out not to be an employee of NIFL, but the Court held service was proper because "the process server reasonably believed he served the proper person" and because the service "fairly and reasonably effectuated the purpose of giving NIFL adequate notice to defend the action." *Id.* at 1147-48. Thus, because the office manager had apparent authority to accept service, service was deemed proper.

Armed with this guidance from Montana case law[3], the Court will examine whether Sanders was authorized by appointment to receive the complaint as Tredick's agent. The only evidence that Tredick appointed Sanders to accept

---

[3] The Court agrees with Plaintiff that *Cascade Development, Inc. v. City of Bozeman* is not relevant to this issue because it dealt with Rule 4(k) regarding service of a local government entity, rather than service of an individual.

service of the complaint is private investigator Colleen Buzzell's affidavit which states that Tredick "was advised by her insurance agent that the agent would have to be served and not her personally." (Doc. 27-3 at 1.) Based on this information, Trotter attempted to serve Sanders twice–both in the Portland, Oregon office and the Idaho Falls, Idaho office. After Sanders learned of these service attempts, she communicated to Cotner twice that she was not authorized to accept service on Tredick's behalf. Thus, as in *Gallagher*, there is a conflict in the evidence regarding whether an agency relationship existed between Sanders and Tredick. As in *NIFL*, the Court must determine whether Sanders had apparent authority to accept service for Tredick.

The Court hesitates to adopt the standard set forth in *Gallagher* wholesale. The unusual and somewhat obscure facts in that 1941 case make its relevancy to this case more tenuous than the more straightforward and recent analysis in *NIFL*. Both *Doble* and *NIFL* examine whether the process server reasonably believed that service was proper and the likelihood the effected service would provide notice of the lawsuit to the defendant. *NIFL*, 180 P.3d at 1147-48. The Court finds this to be the appropriate analysis, despite the strict construction of Rule 4 seen in some prior Montana cases.

Here, process server Chad Christensen filed an affidavit of service stating

that he personally served a copy of the summons and complaint on Sanders at the Liberty Mutual office in Idaho Falls on May 9, 2013. Cotner's paralegal confirmed with Liberty Mutual that Sanders worked from the Idaho Falls office, and she hired Christensen and told him Sanders needed to be served personally. Christensen confirmed that service was effected and sent an affidavit of service to Cotner. Thus, on the surface, Christensen's service of Sanders appears proper and reasonable. However, Sanders' statements to Cotner that she could not accept service and that she has never been to the Idaho Falls office muddies the waters.

Sanders communicated twice to Cotner that she was not authorized to accept service for Tredick–first on April 15, 2013 and again on May 7, 2013. Clearly, Sanders did not believe she could accept service, and this was communicated to Cotner prior to service. Although Cotner is not the process server–whose reasonableness is normally scrutinized–the reasonableness of his belief that Sanders could properly accept service is certainly no less important than that of the process server he hired. Artificially narrowing the scope of review to the process server would put form before substance and would not fairly represent the facts in this case. So, Cotner's belief that service of Sanders as Tredick's agent must also have been reasonable for apparent authority to exist.

Montana law defines an agent as "one who represents another, called the

principal, in dealings with third persons." Mont. Code Ann. § 28-10-101 (2013). Agency is either actual or ostensible. "An agency is actual when the agent is really employed by the principal. An agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be the principal's agent when that person is not really employed by the principal." § 28-10-103. "The acts of the principal, not the putative employee, are the focus of an ostensible agency inquiry." *Brookins v. Mote*, 292 P.3d 347, 356 (Mont. 2012).

Tredick is the principal in this case, so she must have intentionally or by want of ordinary care caused Cotner and his staff to believe that Sanders was her agent for service purposes. Tredick's statement to Buzzell provides sufficient evidence for Buzzell, and in turn, Cotner, to reasonably believe that Sanders was Tredick's agent. Tredick told Buzzell that her insurance agent would have to be served and not her personally. Although Tredick points to her deposition as evidence that "Tredick never stated that Sanders could accept service on her behalf," the deposition testimony only shows that Sanders wrote in her notes that Tredick was aware that Sanders could not accept service on May 9, 2013–after service had been made. (Doc. 36 at 6.) It is Cotner's belief at the time of, and leading up to, service that is important, not Tredick's deposition testimony months

after service.

Thus, the Court focuses on Sanders' statements to Cotner that she was not authorized to accept service. Tredick contends these statements make it unreasonable for Cotner to believe Sanders could accept service. Trotter contends that it is Tredick's actions as the principal, and not Sanders' statements, that are the proper focus of an ostensible agency inquiry. Although Trotter is correct that the principal's actions are the focus of the inquiry, the fact that the third party in this case explicitly told Cotner that she was not authorized to accept service twice makes his belief that Sanders was Tredick's agent unreasonable. Tredick told one process server that Sanders *told her* Sanders should be served instead of Tredick. Buzzell makes it clear that Tredick believed she was advised by Sanders that Sanders should accept service–it was not a direct authorization from Tredick. Once it became clear that Tredick's statement to Buzzell was incorrect, it was no longer reasonable to assume that Sanders was authorized to accept service for Tredick. Trotter's argument that Sanders was properly served as Tredick's agent therefore fails.

**B. Service on the Montana Secretary of State**

Tredick next contends that Trotter's service on the Montana Secretary of State was insufficient because the complaint was not "refused" by Tredick as

required by the statute. Trotter responds that Tredick draws too great a distinction between "refused" and "unclaimed" and that Tredick's strict construction of Rule 4(p) eviscerates the purpose of Montana's nonresident motorist statute.

Montana's nonresident motorist statute is found at Mont. Code Ann. § 25-3-602:

> **Operation of vehicle considered consent to service on secretary of state.** The acceptance by a nonresident of the rights and privileges conferred by the laws of this state to use the highways, roads, and streets of the state and its political subdivisions, as evidenced by the nonresident operating a motor vehicle on the highways, roads, and streets, is considered equivalent to and construed to be an appointment by the nonresident of the secretary of state of the state of Montana to be the nonresident's true and lawful attorney upon whom may be served all lawful summonses and processes against the nonresident growing out of any accident, collision, or liability in which the nonresident may be involved while operating a motor vehicle upon the highways, roads, and streets. The acceptance or operation is a signification of the nonresident's agreement that any summons or process against the nonresident that is served on the secretary of state is of the same legal force and validity as if served on the nonresident personally within the state of Montana.

Montana Rule of Civil Procedure 4(p) governs service on the Secretary of State, and provides in relevant part:

> (4) Such service on the secretary of state is sufficient personal service upon the person to be served provided that either:
> (A) notice of such service, a copy of the summons, and a copy of the complaint are sent from the secretary of state or a deputy to the party to be served at the party's last known address by registered or certified mail, marked "Deliver to Addressee Only" and "Return Receipt Requested." Either such return receipt purportedly signed by the addressee must be

-13-

received by the secretary of state, or the postal authority must advise the secretary of state that delivery of the registered or certified mail was refused by the addressee, except in those cases where compliance is excused under the provisions of Rule 4(i). The date upon which the secretary of state receives either the return receipt or the advice of the postal authority is deemed the date of service.

The two relevant cases cited by the parties, *Olsen v. Dairyland Mutual Insurance Company* and *Bucholz v. Hutton*, both involve more significant violations of the applicable statutes than Trotter's purported violation here. In *Olsen*, the plaintiff failed to provide notice of service upon the secretary of state with the complaint; failed to indicate that the certified mail required personal delivery; and no return receipt of the defendant demonstrating receipt of notice of service was filed. 248 F.Supp. 639, 641 (Mont. 1966). The Court thus found the service was invalid. *Id.* In *Bucholz*, notice of service was mailed by the plaintiff's attorney before service was actually made upon the Secretary of State; the notice was not sent by registered mail 'requiring personal delivery' to the defendant; the defendant did not personally sign the return receipt, and there was no evidence that he actually received the notice of service and copy of summons and complaint. 153 F.Supp. 62, 68 (D.C. Mont. 1957).

As Trotter points out, she properly served the affidavit, summons, and complaint for service on the secretary of state, and a certified copy of these

documents were sent to Tredick's correct address marked "Deliver to Addressee Only" and "Return Receipt Requested." (Doc. 27 at 25.) The only questionable aspect of Trotter's compliance with Rule 4(p) is whether the return of the documents marked "unclaimed" rather than "refused" is sufficient.

The particular facts of this case, combined with the specific refusal language in Rule 4(p) compel a finding that Trotter's service on the secretary of state was not valid under the rule. The Secretary of State was notified on May 8 that delivery of certified mail was not completed because it was returned to the sender as "unclaimed." The envelope in which the documents were mailed was stamped "return to sender" with several reasons for the return itemized next to the stamp. (Doc. 3-2 at 3.) Among other reasons, such as "moved" or "insufficient address," are both "unclaimed" and "refused." Presumably, "refused" indicates the addressee was made aware of the package and refused to accept delivery. This interpretation is consistent with case law that finds service is proper when the complaint and summons are tendered to a defendant who refuses to physically accept the documents. *See Travelers Cas. and Sur. Co. of America v. Brenneke*, 551 F.3d 1132, 1136 (9th Cir. 2009). "Unclaimed" does not provide any information about what delivery attempts were made or whether the addressee was aware of such attempts. The Court is bound by the language of the statute and

looks no further when its meaning is clear. *Ridley v. Guaranty Nat. Ins. Co.*, 951 P.2d 987, 990 (Mont. 1997). The language of the rule here requires the complaint be refused by the addressee if a receipt of service is not returned. Because refusal by Tredick was a clear option in this case that did not occur, and because there is no evidence that Tredick was made aware of the attempted delivery of these documents, the Court has no choice but to find that Trotter did not adequately comply with Rule 4(p). Service on the secretary of state was not proper.

**C. Equitable Estoppel**

Trotter also contends that dismissing her claim would allow Tredick to benefit from her avoidance of service in violation of the doctrine of equitable estoppel. "Equitable estoppel prevents one party from unconscionably taking advantage of a wrong while asserting a strict legal right, and will be invoked where 'justice, honesty, and fair dealing' are promoted." *Cascade Development, Inc. v. City of Bozeman*, 276 P.3d 862, 866 (Mont. 2012)(citation omitted). The doctrine is based in both statute and case law and serves to prevent inequitable results based on fraud or intentional misrepresentation. *Id.*

The statutory basis permits a conclusive presumption when a party has caused another to rely on an intentional misrepresentation:

the following presumptions are conclusive: (1) the truth of a declaration,

> act, or omission of a party, as against that party in any litigation arising out of the declaration, act, or omission, whenever the party has, by the declaration, act, or omission, intentionally led another to believe a particular thing true and to act upon that belief.

Mont. Code Ann. § 21-6-601(1).

The common law doctrine "rests upon the general principle that 'when one of two innocent persons–that is, persons each guiltless of an intentional, moral wrong–must suffer a loss, it must be borne by that one of them who by his conduct–acts or omissions–has rendered the injury possible." *Cascade*, 276 P.3d at 866. Equitable estoppel only applies when a complaining party lacks both actual knowledge and a readily available means of gaining knowledge of the true facts. *Id.*

In *Cascade*, a deputy city attorney accepted service of a complaint for the city of Bozeman. Deputy city attorneys are not permitted to accept service for a city under Mont. R. Civ. P. 4(k), thus the district court dismissed the complaint for insufficient service. The Montana Supreme Court held that the deputy county attorney who said she could accept service did not intentionally mislead the process server, so the statutory presumption did not apply. *Id.* The Court further found that it "was neither Bozeman's duty to inform the professional process server of the rules, nor Cascade's right to simply rely upon the statements" in

holding that the common law doctrine did not apply.

The statutory presumption does not apply here because, although Tredick failed to provide her location to the many people who were trying to serve her, she did not intentionally give anyone misleading information, such as an inaccurate address or date as to her whereabouts. Instead, she was vague and evasive regarding her whereabouts, and refused to tell Cotner and his process servers where and when they could serve her. This evasiveness caused the injury here. While Tredick is correct that Trotter could have begun her service efforts earlier, the extensive efforts she did make once begun were thwarted at every turn by Tredick.

The common law doctrine puts the burden of a loss between two innocent persons on the one whose acts or, here, omissions, made the injury possible. Also, the complaining party must lack the actual knowledge or a readily available means to obtain the knowledge for equitable estoppel to prevent her injury. Here, the injury is dismissal of Trotter's claim and the knowledge was Tredick's location. Trotter had an address for Tredick which she used many times through two different service methods to attempt service. Cotner and his process servers contacted Tredick several times on the telephone, and each time she refused to provide her current or future whereabouts. She also rejected service via email

through signing an acknowledgment of service. Thus, she withheld the knowledge Trotter required to perfect service in this case, apparently with the support of, if not on the recommendation from, her insurance agent who had assured her that her policy covered the accident in question.

Based on these facts, the Court finds that "justice, honesty, and fair dealing are promoted" by allowing this case to go forward. Tredick is equitably estopped from asserting defective service of process and her motion to dismiss will be denied.

IT IS ORDERED that Defendant's motion to dismiss (Doc. 2) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for enlargement of time to serve (Doc. 28) is DENIED AS MOOT.

Dated this 17th day of December, 2013.

/s/ Dana L. Christensen
Dana L. Christensen, Chief District Judge
United States District Court